HARDER LLP
CHARLES J. HARDER (State Bar No. 184593)
DILAN A. ESPER (State Bar No. 178293)
JORDAN SUSMAN (State Bar No. 246116)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (424) 203-1600
Facsimile: (424) 203-1601
Email: charder@harderllp.com
desper@harderllp.com
jsusman@harderllp.com

Attorneys for Defendants
Simon Painter, Timothy Lawson, International Special Attractions, Ltd., TML Enterprises PTY, Ltd., Asia Live Network, PTE, Ltd., and The Works Entertainment, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BRETT DANIELS, an individual; and BRETT DANIELS PRODUCTIONS, INC., a Wisconsin corporation,

Plaintiffs,

v.

SIMON PAINTER, an individual; TIMOTHY LAWSON, an individual; INTERNATIONAL SPECIAL ATTRACTIONS, LTD., a Colorado corporation; TML ENTERPRISES, PTY, LTD., a foreign corporation; ASIA LIVE NETWORK, PTE, LTD., a foreign corporation; and THE WORKS ENTERTAINMENT INC., a Nevada corporation,

Defendants.

CASE NO. 2:16-CV-3782 RSWL-Ex

[Assigned to Hon. Ronald S.W. Lew, Courtroom 21]

**OPPOSITION TO PETITIONERS BRETT DANIELS AND BRETT DANIELS PRODUCTIONS, INC.'S APPLICATION FOR AN ORDER TO CONFIRM FINAL ARBITRATION AWARD**

[Declaration of Jordan Susman Concurrently filed]

Date: May 29, 2018
Time: 10:00 a.m.
Courtroom: 21

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I. INTRODUCTION…………………………………………………………………..1

II. STATEMENT OF RELEVANT FACTS…………………………………….2

THE ORIGINS OF THE DISPUTE...……………………………………2

PROCEDURAL BACKGROUND…………………………………………4

III. THE MOTION SHOULD BE DENIED FOR NON-COMPLIANCE WITH LOCAL RULE 7-3………………………………………………………...…..5

IV. THE APPLICATION SHOULD BE DENIED ON THE MERITS, AND THE AWARD SHOULD BE VACATED OR CORRECTED……………………..6

A. THE TALENT AGENCIES ACT REQUIRES THE VOIDING OF AN ILLEGAL CONTRACT..…………………………………………7

B. THE ARBITRATOR'S DECISION TO MAKE ALL OF THE PAINTER PARTIES LIABLE FOR THE CREATOR AGREEMENT IS A MANIFEST DISREGARD OF THE LAW…………………………...11

C. THE ARBITRATOR'S AWARD OF FUTURE DAMAGES IS COMPLETELY IRRATIONAL……………………………………11

D. THE ARBITRATOR DISREGARDED THE LAW REGARDING POST-JUDGMENT INTEREST……………………………………13

V. CONCLUSION……………………………………………………………13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bosack v. Soward*,
586 F.3d 1096 (9th Cir. 2009) ........ 11

*Bryan v. LAX Corp.*,
(2001) TAC 22-99 ........ 8

*Cameron v. Donaldson*
(1994) TAC 3-94 ........ 7

*Chinn v. Tobin*,
(1997) TAC No. 17-96 ........ 9, 10

*Christensen v. Harris County*,
529 U.S. 576 (2000) ........ 5

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ........ 6, 11

*Donnelly v. San Francisco Bridge Co.*,
117 Cal.417 (1897) ........ 11

*Marathon Entm't, Inc. v. Blasi*,
42 Cal.4th 974 (2008) ........ 7, 8

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,
44 F.3d 826 (9th Cir. 1995) ........ 6

*Park v. Deftones*,
71 Cal. App. 4th 1465 (1999) ........ 7

*Screen Actors Guild, Inc. v. Farm Fed Productions, LLC*,
2009 WL 10674391 (C.D. Cal. Nov. 5, 2009) ........ 5

*Sevano v. Artistic Productions, Inc.*
(1997) TAC 8-93 ........ 7, 9

*Styne v. Stevens*,
26 Cal.4th 42 (2001) ........ 7

*Tool Dissectional, LLC et al. v. Gardner*,
(2002) TAC 35-01 .......... 8

*Voltage Pictures, LLC v. Gulf Film, LLC*,
No. LACV 18-0696-VAP, ECF 34, slip op. (C.D. Cal. Apr. 17, 2018) .......... 6

*Waisbren v. Peppercorn Productions, Inc*.,
41 Cal. App. 4th 246 (1995) .......... 7

*Yoo v. Robi*,
126 Cal. App. 4th 1089 (2005) .......... 8, 10

**Statutes**

28 U.S.C. § 1961 .......... 13

Cal. Lab. Code § 1700 et seq. .......... 7

California Lab. Code § 1700.4 .......... 7

Civ. Code § 2300 .......... 11

Civ. Code § 2315 .......... 11

Civ. Code § 2316 .......... 11

Civ. Code § 2334 .......... 11

Evid. Code § 500 .......... 11

**Other Authorities**

CACI 359 .......... 12

Central Distrt Local Rule 7-3 .......... 1, 5, 6

Defendants Simon Painter, Timothy Lawson, International Special Attractions, Ltd., TML Enterprises, Pty, Ltd., Asia Live Network, Pte, Ltd., and The Works Entertainment, Inc. (collectively, "Painter Parties") respectfully submit the following Memorandum of Points and Authorities in opposition to Plaintiffs' motion to confirm the arbitration award issued on March 19, 2018 in American Arbitration Association case number 01-15-0005-6700 (the "Award").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Plaintiffs filed the present motion in violation of Local Rule 7-3, by failing to meet and confer with Defendants, and spurning several requests to do so. This is especially egregious because the parties are in settlement negotiations, and Plaintiffs' actions have forced Defendants to file this opposition and expend fees on a matter that may be obviated.

Despite Plaintiffs' violation of Local Rule 7-3, on May 4, 2018, Defendants met and conferred with Plaintiffs per Local Rule 7-3 regarding Defendants' intention to file a Motion to Vacate or Correct the Award ("Motion to Vacate"). In accordance with Local Rule 7-3, Defendants will file their Motion to Vacate at least seven days after the May 4, 2018 meet and confer. Defendants will include with their Motion to Vacate an Appendix of relevant arbitration exhibits referenced herein, as well as cases from the California Labor Commissioner.

On the merits, the underlying arbitration concerned a dispute as to whether a fee is owed to Plaintiff Brett Daniels, a professional magician who left a traveling magic show after disputes with the producers and various charges of misfeasance and malfeasance, and to Daniels' loan-out company. Plaintiffs alleged that they should continue to receive their fee because they had procured magicians who had benefitted the production, while the Painter Parties alleged that Plaintiffs should not receive the fee because they materially breached their agreements. The Arbitrator found for the

Plaintiffs and awarded them over $2 million in damages. The Award is reviewable for manifest disregard of the law.

The Arbitrator manifestly disregarded the California Talent Agencies Act, which prohibits anyone from engaging in the occupation of a talent agent and procuring the services of performers without obtaining a license from the Labor Commissioner, and prohibits anyone who violates the Act from collecting a fee for his/its services. Plaintiffs violated the Act and the Arbitrator manifestly disregarded the law in awarding damages.

Independently, the Arbitrator manifestly disregarded the law and acted in excess of his jurisdiction by imposing joint and several liability on several parties who had no contractual relationship or obligation to Plaintiffs.

Independently, the Arbitrator also miscalculated the damages award by treating the case as a total breach and grossly overestimating the future damages that will allegedly be suffered by Plaintiffs and manifestly disregarding the established California law on the calculation of future damages.

Finally, the Arbitrator disregarded applicable law governing the calculation of interest, which must be corrected before the Award is confirmed.

## II.

## STATEMENT OF RELEVANT FACTS[1]

### The Origins of the Dispute

In late 2010, Painter and Daniels began discussing the concept of creating a live ensemble magic show featuring a cohesive mix of the best magicians and illusionists in the world.

In April 2011, Painter sold the idea of an ensemble magic show to the head of commercial programming at the Sydney, Australia Opera House. Throughout June and July 2011, Painter and Daniels planned, created, and shaped the pending

[1] The following facts are from the Award.

production, entitled *The Illusionists*.

The show premiered at the Sydney Opera House in January 2012 to sold-out shows and positive reviews. Encouraged by the show's success, the Painter Parties booked additional venues for *The Illusionists* around the globe.

On February 28, 2012, Daniels agreed to fulfill a role to submit acts to the Painter Parties, and he fulfilled that role by, in fact, finding and submitting magicians to perform in *The Illusionists*.

On March 15, 2012, Daniels sent Painter an email which contained the following proposed agreement:

> This is an agreement between Brett Daniels Productions, Inc. and the 'producers' of 'The Illusionists' aka/ 'Simon Painter/ISA/Tim Lawson' and shall include any other entities they bring into, or work through, in presenting the theatrical product known as 'The Illusionists' in any of its variations. Brett Daniels Productions, Inc. shall receive, on an ongoing basis, in perpetuity, 10% of the total 'act fee budget.' The 'act fee budget' shall be defined as the total cumulative amount that the 'magic based acts' are contracted for to appear in the production. This fee, shall be authorized by the 'producers' and paid by 'acts'—unless, in certain cases, due to 'producers' independent preference, producers choose to not burden a particular 'act' with this fee, in which case 'producers' shall pay this (10% act) additional fee to directly to Brett Daniels Productions, Inc.

Painter responded, "Ok. All agreed with [T]im and I …" in answering Daniels' March 15, 2012 email. This email exchange was later referred to by Daniels as the "Creator Agreement" and the Arbitrator adopted that term in his Award.

Pursuant to the Creator Agreement, Daniels was paid 10% of the act fee budget on *The Illusionists* in addition to his salary as a performer.

In addition to the Creator Agreement, Daniels entered into a series of Performance Agreements for each tour of *The Illusionists* he appeared in. Daniels' Performance Agreements contained a "Conduct and Behavior" clause that Daniels violated in a number of ways: throwing bottles, shouting profanities, making sexual advances on a crew member, propositioning other people, and eventually threatening

to kill Painter. Daniels denied the allegations; nevertheless, Daniels' relationship with the Show's performers and Painter Parties was undoubtedly broken.

Following an *Illusionists* tour in Venezuela, on or about July 25, 2013, Daniels ceased performing with *The Illusionists* and did not enter into any additional Performance Agreements. Painter Parties ceased paying Daniels the 10% act fee under the Creator Agreement in November 2013.

**Procedural Background**

On November 9, 2015, Daniels filed a complaint against certain Painter Parties in the U.S. District Court for the Eastern District of Wisconsin (the "Wisconsin Action").

On November 13, 2015, certain Painter Parties filed an arbitration demand and a statement of claim against Daniels with the AAA.

On November 16, 2015, certain Painter Parties filed a Complaint and Motion to Compel Arbitration in the U.S. District Court for the Central District of California.

On May 27, 2016, the U.S. District Court in Wisconsin ordered that the Wisconsin Action be transferred to the U.S. District Court for the Central District of California.

On September 16, 2016, the U.S. District Court for the Central District of California entered an order compelling arbitration of all Daniels' claims against the Painter Parties to arbitration before AAA.

In November and December 2017, the arbitration was heard by Robert C. O'Brien, an arbitrator with AAA. On March 19, 2018, the Arbitrator issued the Award in which he awarded Daniels on his breach of contract claim: past damages of $845,803; prejudgment interest of 10% per annum on the contract damages of $181,031; contract damages on existing contracts of $198,582, and; future contract damages of $1,381,871.40. All other claims and counterclaims were either withdrawn or denied.

## III.

## THE MOTION SHOULD BE DENIED FOR NON-COMPLIANCE WITH LOCAL RULE 7-3.

Central District Local Rule 7-3 provides that "In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."

It is undisputed that Plaintiffs did not do this. Indeed, the Painter Parties requested four times that Plaintiffs withdraw their motion without prejudice and meet and confer, and even pointed out case authority (discussed below) that applies Rule 7-3 to motions to confirm arbitration awards. Plaintiffs repeatedly declined to do so.

Plaintiffs' conduct was no mere technical violation of the rules. This case is currently the subject of active settlement negotiations. If the negotiations come to fruition, they could obviate the need for this proceeding. Plaintiffs' refusal to meet and confer was calculated and strategic—to put pressure on the Painter Parties by running up their attorney's fees during settlement talks, and giving them the minimum amount of time (only seven days) to prepare this Opposition.

Plaintiffs contend that Rule 7-3 does not apply to motions to confirm arbitration awards. This interpretation is at odds with the text of Rule 7-3, which contains express exceptions but does not contain an exception for motions to confirm arbitration awards. As the legal maxim goes, "*expressio unius est exclusio alterius*" (expression of some things implies exclusion of others). *Christensen v. Harris County*, 529 U.S. 576, 583 (2000). The drafters' deliberate decision to exclude some motions, but not motions to confirm arbitration awards, shows that such awards are covered under Rule 7-3.

This interpretation of Rule 7-3 is supported by *Screen Actors Guild, Inc. v.*

*Farm Fed Productions, LLC*, 2009 WL 10674391 at *1 n. 1 (C.D. Cal. Nov. 5, 2009), in which Judge George H. Wu noted that a party moving to compel arbitration was required to comply, and did comply, with Rule 7-3.

Plaintiffs rely on *Voltage Pictures, LLC v. Gulf Film, LLC*, No. LACV 18-0696-VAP (SKx), ECF 34, slip op. at 10 n.5 (C.D. Cal. Apr. 17, 2018), for the contrary position; however, *Voltage Pictures* purports to recognize an exception in Rule 7-3 for "case initiating motions" which has no support in the text of the rule.

The bottom line is that Plaintiffs were presented with authority that confirms what the plain language of the rule says, which is that they were required to meet and confer before filing their application to confirm the arbitration award. They chose to refuse to comply with the rule and in the process run up the Painter Parties' attorney's fees during pending settlement negotiations, and force them to oppose the application with the least amount of time possible (only seven days). Their motion should be denied for non-compliance with the rule.

## IV.

## THE APPLICATION SHOULD BE DENIED ON THE MERITS, AND THE AWARD SHOULD BE VACATED OR CORRECTED.

Where an arbitrator recognizes the applicable law and then ignores it, the arbitration award must be vacated. *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995). "Review of an arbitration award is both limited and highly deferential, and the arbitration award may be vacated only if it is 'completely irrational' or 'constitutes manifest disregard of the law.'" *Comedy Club, Inc. v. Improv W. Assocs*., 553 F.3d 1277, 1288 (9th Cir. 2009) (internal quotes and cites omitted). "[T]he manifest disregard ground for vacatur is shorthand for a statutory ground under the [Federal Arbitration Act], specifically 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'" *Id*. at 1290. The "completely irrational" standard is satisfied when the arbitration award "fails to draw its essence from the [parties'] agreement." *Id.* at 1288.

**A. <u>The Talent Agencies Act Requires the Voiding of an Illegal Contract</u>**

California's Talent Agencies Act prohibits a person from engaging in the occupation of a talent agency without first obtaining a license from the Labor Commissioner. Cal. Lab. Code § 1700 et seq. California Labor Code section 1700.4 defines a "talent agency" as a person or firm who "engages in the occupation of procuring, offering, promising or attempting to procure employment or engagements for an artist." Cal. Lab. Code § 1700.4

The TAA "regulates conduct, not labels; it is the act of procuring (or soliciting) not the title of one's business that qualifies one as a talent agency and subjects one to the Act's licensure and related requirements." *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 986 (2008). Even incidental or occasional talent agency services require licensure by the Labor Commissioner. *Park v. Deftones*, 71 Cal. App. 4th 1465, 1469 (1999).

Because the TAA is a remedial statute, any contract to perform procurement services without a license is void *ab initio* (void from inception). *Waisbren v. Peppercorn Productions, Inc*., 41 Cal. App. 4th 246, 261 (1995); *Styne v. Stevens*, 26 Cal. 4th 42, 46 (2001) ("One must have a license to act as a talent agency . . . and any contract of an unlicensed person for talent agency services is illegal and void *ab initio*."). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Marathon Entm't*., 42 Cal. 4th at 996.

To prove a violation of the TAA, a party need only show "by a preponderance of the evidence that there was a promise to procure employment or that the person made an attempt to procure employment on behalf of the artist." *Cameron v. Donaldson* (1994) TAC 3-94, p. 2. The term "procure," as used in Labor Code §1700.4, "means to get possession of: obtain, acquire, to cause to happen or be done: bring about." *Sevano v. Artistic Productions, Inc*. (1997) TAC 8-93, pp. 12-13.

California Civil Code §§ 1550, 1598, 1599 and 1668 provide that contracts must have a "lawful object" to be valid and contracts with an illegal object (either in

whole or in part) are illegal or "contrary to policy of law" and therefore void. The California Supreme Court in *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974 (2008), held that the California Civil Code regarding contracts, and specifically section 1599, applies to disputes under the TAA. "Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Id*. at 996.

The TAA prevents an unlicensed talent agent from receiving payment under any theory of equity. *Yoo v. Robi*, 126 Cal. App. 4th 1089, 1104 n.30 (2005). Similarly, the Labor Commissioner routinely voids contracts even when one of the parties' purportedly acted with "unclean hands" by accepting the fruits of the unlicensed talent agent's labors. *See e.g., Bryan v. LAX Corp.*, TAC 22-99; *Tool Dissectional, LLC et al. v. Gardner*, TAC 35-01.

Daniels violated the TAA. On February 28, 2012, Daniels sent an email to Painter stating that he could "agree to fulfill a role to submit acts," that is, finding and submitting magicians to the production. According to the Arbitrator, Daniels fulfilled this role. (*Id.*, 18:7-9).

Ample additional evidence of Daniels' unlawful procurement was also proffered at arbitration, including:

- On April 11, 2012, Daniels solicited a magician named Luis De Mato. Daniels wrote to De Mato, "**I act as the 'agent'** on the show **for all the acts, being submitted to the producer**, Simon Painter. (I receive from each act 10% of their total fee)." (CLMTS 14; TX 781)
- On June 11, 2012, Daniels sent an email to a magician's manager, stating "it was me who initially: A) went to see Dan's [the magician] show on my own and then sell him to Simon and team … **I always put Dan** [magician being submitted to the production] **first and foremost to both Simon** [Painter, the producer] **and the Sydney Opera House** [the co-producer] … I say this, I believe, **acting as an agent for the acts** …

**I unilaterally sold Dan** [talent] **to Simon** [producer]." (CLMTS 13; TX 796).

- On April 17, 2012, Daniels solicited a magician named Jorge Blass. Daniels wrote to Blass, "I also act as the 'agent' to bring in all acts, and as such I ask for 10% fee of each act's total renumeration [sic]." (CLMTS 15).
- On April 7, 2012, Daniels sent an email to a magician named Andrew Basso and his manager, Dennis Forti, stating: "the 10% fee is not paid to me from you because I am the illusion director. It is paid to me, in part, because I 'found' and suggested Andrew Basso to Simon Painter & team to fill the role of 'Escapologist' for this and future productions." (CLMTS 17; TX 780).

The foregoing facts are undisputable, and they are the very definition of procurement under the TAA—Daniels obtained employment for magicians in *The Illusionists* and was paid for it. *Sevano v. Artistic Productions, Inc*. (1997) TAC 8-93, pp. 12-13.

Despite these undisputed violations of the TAA, the Arbitrator held that the TAA did not apply because Daniels acted on behalf of the show and not the magicians that he procured. (Award, 28:6-9). According to the Arbitrator, Daniels was like "an employee of a production company." (Award, 27:25). Elsewhere, the Arbitrator likened Daniels to "employers who directly offer employment to artists." (Award, 28:3). The Arbitrator concluded: "The key inquiry here is thus whether the talent agent [Daniels] worked for the talent or simply hired the talent on behalf of the production." (Award, 28:4-5).

**This "key inquiry" demonstrates a manifest disregard for the law.** According to the very case relied upon by the Arbitrator, the key inquiry must be whether Daniels acted as an intermediary between the magicians and the Painter Parties who engaged their services. *See Chinn v. Tobin*, TAC No. 17-96, at 7 ("[W]e

hold that the 'activity of procuring employment,' under the Talent Agencies Act, refers to the role an agent plays when acting, as an intermediary between the artist whom the agent represents and the third-party employer who seeks to engage the artist's services."). The answer to this inquiry is a resounding, "Yes."

As the Arbitrator acknowledged, Daniels recruited performers and submitted acts to the Painter Parties. (Award, 11:11, 18:7-9). Unlike the respondent in *Chinn*, Daniels was not an employee of the Painter Parties—he was a magician in their shows who also procured talent. Of greater significance, Daniels was not the other magicians' employer—he was a colleague who "brought in" talent (Award 9:7), "recruited" those other magicians (Award 10:1), and "submit[ted] acts." (Award 18:8).

In fact, Daniels referred to his a fee as a "10% management fee arrangement" . . . a "quid pro quo for my being involved in creating, selling, producing, selling and **bring in the right talent**." (CLMTS 11).

Moreover, Daniels was consistently paid for his procurement services by the talent—the acts themselves—and not by the production. (CLMTS 16, 17, 27; TX 780, 805, 1010); (K. James Deposition, 24:16-25:3); (J. Kalin Deposition, 25:25-27:4; M. Kalin Deposition, 20:11-22).

The law in this situation is unambiguous: any agreement to pay an unlicensed talent agent is void *ab initio*. *Yoo v. Robi*, 126 Cal. App. 4th 1089, 1103–04 (2005) (emphasis in original) ("California courts have uniformly held a contract under which an unlicensed party **procures or attempts to procure** employment for an artist in violation of the Act is void *ab initio* and the party procuring the employment is barred from recovering commissions for *any* activities under the contract.").

The Arbitrator was aware of the TAA and its drastic implications, he simply chose to ignore the law. Consequently, the Award should be vacated and not confirmed into a judgment.

**B. <u>The Arbitrator's Decision to Make All of the Painter Parties Liable for the Creator Agreement is a Manifest Disregard of the Law</u>**

For over 140 years, California has held that only an actual or ostensible agent can bind a party to a contract. *See* Civ. Code §§ 2300, 2315, 2316, 2317, 2334 (all enacted 1872); *see also Mannion*, 243 Cal. App. 2d at 320; *Donnelly v. San Francisco Bridge Co*., 117 Cal. 417, 421 (1897).

According to the express language of the Creator Arrangement, it is between "Brett Daniels Productions, Inc. and the 'producers' of 'The Illusionists' aka/ 'Simon Painter/ISA/Tim Lawson' and shall include any other entities they bring into, or work through, in presenting the theatrical product known as 'The Illusionists'…"

No evidence was proffered at the arbitration that Painter was an actual or ostensible agent for ISA, Tim Lawson, or any of the other Painter Parties. *See* Evid. Code § 500 (Plaintiff bears the burden of proof as to each fact the existence of which is essential to the claim for relief). Nor did the Arbitrator make any findings regarding Painter's actual or ostensible agency. Instead, the Arbitrator held the other Painter Parties bound by the Creator Agreement because the words of the agreement say they are bound. In so doing, the Arbitrator manifestly disregarded the law.

**C. <u>The Arbitrator's Award of Future Damages is Completely Irrational</u>**

An arbitration award is completely irrational when it fails to draw its essence from the parties' agreement. *Comedy Club, Inc.*, 553 F.3d at 1288. "Under this standard of review, we do not decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision draws its essence from the contract. We will not vacate an award simply because we might have interpreted the contract differently." *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (internal quotes and cites omitted).

In the Award, the Arbitrator repeatedly held that Daniels is entitled to 10% of the act fee budget for all variations of *The Illusionists*. *See* Award, 16:20-22 ("The clear and unambiguous terms of the Creator Agreement guide the Arbitrator's

resolution of this dispute. . . Pursuant to the Creator Agreement, Daniels shall receive, on an ongoing basis, in perpetuity, 10% of the total act fee budget for The Illusionists in any of its variations."); Award, 18:20-21 ("the Arbitrator agrees with Daniels that he fulfilled all of his obligations under the Creator Agreement to receive his 10% fee."); Award, 19:16-20 ("Daniels is entitled to 10% of the total, cumulative act fee budget for all variations of *The Illusionists*.")

The Painter Parties do not dispute the foregoing findings of the Arbitrator (save for the fact that it violates the TAA, as discussed above). An award that ordered the Painter Parties to pay Daniels 10% of the total, cumulative act fee budget for all variations of *The Illusionists* would have drawn its essence from the parties' agreement—but that is not what the Arbitrator ordered.

Instead of ordering Painter Parties to pay Daniels an amount based upon the essence of their agreement, the Arbitrator ordered the Painter Parties to pay Daniels $1,381,871.40 in **future damages** based upon an **estimation** of **future profits**. *See* Award, 38:16-39:20; Award, 42:15-16 ("The Arbitrator finds that a lump-sum damages award is appropriate to compensate Daniels for the loss of his future profits.") This is completely irrational. It also manifestly disregards California law. *See* CACI 359 ("The amount of damages for future harm must be reduced to present cash value. This is necessary because money received now will, through investment, grow to a larger amount in the future.")

The Arbitrator concluded that, under the parties' agreement, Daniels is entitled to 10% of the total, cumulative act fee budget for all variations of *The Illusionists*, an exact amount that can be easily calculated. Daniels should, therefore, receive 10% of the total, cumulative act fee budget for all variations of *The Illusionists*, and not a speculative amount based upon future profits.

The Award should be corrected to provide for future damages based upon the findings of the Arbitrator.

**D. The Arbitrator Disregarded the Law Regarding Post-Judgment Interest**

This action originated in Federal Court when Daniels filed suit in the Eastern District of Wisconsin. (Award 2:4-5). The Painter Parties filed an arbitration demand with the AAA, and then filed a Motion to Compel Arbitration with this Court. The Wisconsin Action was transferred to the Central District of California, and this Court ordered the dispute to arbitration. Accordingly, post-judgment interest should be calculated according to federal law, and not the state law in California.

The Arbitrator knew that this matter was transferred to arbitration via federal court. (Award 2:12-13). Moreover, because Daniels included a claim for Copyright Infringement, the matter could only have been litigated in federal court if it were not ordered to arbitration. It therefore follows that post-judgment interest should be calculated according to federal law—28 U.S.C. § 1961—and not California law.

The Court should correct the foregoing error.

**V.**

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be denied. If the merits are reached, the arbitration award should be vacated, or in the alternative, corrected to reflect the proper calculations of future damages and interest.

Dated: May 8, 2018

HARDER LLP

By: */s/ Charles J. Harder*
CHARLES J. HARDER
Attorneys for Defendants / Petitioners
SIMON PAINTER, TIMOTHY LAWSON,
INTERNATIONAL SPECIAL
ATTRACTIONS, LTD.,
TML ENTERPRISES, PTY, LTD.,
ASIA LIVE NETWORK, PTE, LTD., and
THE WORKS ENTERTAINMENT, INC.