|   |   |
|---|---|
| | O |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRETT DANIELS, an individual; and BRETT DANIELS PRODUCTIONS, INC., a Wisconsin corporation,<br><br>          Plaintiffs,<br><br>    v.<br><br>SIMON PAINTER, an individual; TIMOTHY LAWSON, an individual; INTERNATIONAL SPECIAL ATTRACTIONS, LTD., a Colorado corporation; TML ENTERPRISES, PTY, LTD., a foreign corporation; ASIA LIVE NETWORK, PTE, LTD., a foreign corporation; and THE WORKS ENTERTAINMENT INC., a Nevada corporation,<br><br>          Defendants. | CV 16-3782-RSWL-E<br><br>**ORDER re: Plaintiffs' Application for Confirmation of Arbitration Award** [71]**; Defendants' Motion to Vacate or Correct Arbitration Award** [77]**; Respondent MagicSpace Entertainment's Motion to Vacate or Correct Arbitration Award** [76] |

Currently before the Court is Plaintiffs Brett Daniels and Brett Daniels Productions, Inc.'s

1

(collectively, "Plaintiffs") Application for Order for Confirmation of Final Arbitration Award ("Plaintiffs' Application") [71], Defendants Simon Painter; Timothy Lawson; International Attractions, Ltd.; TML Enterprises, PTY, Ltd.; and Asia Live Network PTE, Ltd.'s (collectively, "Defendants") Motion to Vacate or Correct Arbitration Award ("Defendants' Motion") [77], and Respondent MagicSpace Entertainment Inc.'s ("MagicSpace") Motion to Vacate or Correct Arbitration Award ("MagicSpace's Motion") [76]. Having reviewed all papers submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Application, **DENIES** Defendants' Motion, and **DENIES** MagicSpace's Motion.

## I. BACKGROUND

**A.  Factual Background**

Plaintiff Brett Daniels ("Daniels") is a professional magician, who conducted business through his solely-owned corporate entity, Plaintiff Brett Daniels Productions, Inc. ("BDPI"). Decl. of Tyler R. Andrews in Supp. of Pls.' Appl. to Confirm Arbitration Award ("Andrews Decl."), Ex. A ("Final Award") at 8:19-22, ECF No. 71-2.

Defendant Simon Painter ("Painter") is a producer and promoter of live events who worked as the Creative Producer at International Special Attractions, Ltd. ("ISA") beginning in 2011. Id. at 7:20-23. Since

2012, Painter conducted his business through several corporate entities, including, among others, Defendant Asia Live Network ("ALN") and Defendant The Works Entertainment, Inc. ("The Works"). Id. at 7:25-8:1.

Painter collaborated with promoter and producer Timothy Lawson ("Lawson") to produce *The Illusionists* ("The Show"), a live stage magic show. Id. at 8:2-3. Lawson conducted business through several entities, including, among others, Defendant TML Enterprises, Pty, Ltd. ("TML") and ALN. Id. at 8:3-6.

MagicSpace is a promoter and live stage production company. Id. at 8:7-8. MagicSpace and ALN entered into an agreement in 2013 for MagicSpace to promote and present The Show for a term of three years. Id. at 8:8-9. ALN and MagicSpace then extended their agreement through October 2020. Id. at 8:10. MagicSpace's wholly-owned subsidiary, The Illusionists North America, LLC, currently possesses the right to promote and present The Show. Id. at 8:11-12.

In late 2010, Painter and Daniels began discussing the concept of creating a live ensemble magic show. Id. at 8:24-25. After a successful meeting with Sydney Opera House executives in September 2011, the Sydney Opera House confirmed The Show for its premiere during the January 2012 season. Id. at 10:22-23. Daniels performed in The Show as the "Grand Illusionist" and was compensated $12,500 per week during The Show's initial run at the Sydney Opera House per a written

3

performance agreement with ISA. Id. at 11:8-10. After The Show's premiere at the Sydney Opera House, Daniels continued his efforts to add new material, recruit new performers, and make substantial creative improvements to The Show. Id. at 11:10-12.

On March 15, 2012, Daniels sent an email to Painter stating,

> This is an agreement between Brett Daniels Productions, Inc. and the 'producers' of 'The Illusionists' aka/ 'Simon Painter/ISA/Tim Lawson' and shall include any other entities they bring into, or work through, in presenting the theatrical product known as 'The Illusionists' in any of its variations. Brett Daniels Productions, Inc. shall receive, on an ongoing basis, in perpetuity, 10% of the total 'act fee budget.' The 'act fee budget' shall be defined as the total cumulative amount that the 'magic based acts' are contracted for to appear in the production. This fee, shall be authorized by the 'producers' and paid by 'acts'—unless, in certain cases, due to 'producers' independent preference, producers choose to not burden a particular 'act' with this fee, in which case 'producers' shall pay this (10% act) additional fee to directly to Brett Daniels Productions, Inc.

Id. at 16:5-10. Painter responded to the email stating that he and Lawson agreed to the terms of the agreement (the "Creator Agreement"). Id. at 16:12-13.

Following alleged violations of the Conduct and Behavior clause of Daniels' performance agreement, Daniels ceased performing for The Show and did not enter into any additional performance agreements. Id. at 11:22-12:9. Defendants ceased paying Daniels the 10% act fee contained in the Creator Agreement in November 2013. Id. at 12:10-11. Defendants continued to develop other magic shows following Daniels'

4

departure, and Daniels claimed that these shows all fell under the Creator Agreement, entitling him to 10% of the total act fee budget. Id. at 12:13-22.

**B.    Procedural Background**

On November 9, 2015, Plaintiffs filed their Complaint [1] in the United States District Court for the Eastern District of Wisconsin ("Wisconsin Action").[1] On January 8, 2016, Plaintiffs filed their First Amended Complaint ("FAC") in the Wisconsin Action, which added The Works as a party and advanced eleven claims: (1) breach of oral contract, (2) breach of written contract, (3) breach of TV Agreement, (4) breach of the covenant of good faith and fair dealing, (5) unjust enrichment, (6) conversion, (7) copyright infringement, (8) misappropriation of trade secrets, (9) accounting, (10) breach of fiduciary duty, and (11) declaratory relief. Pls.' First Am. Compl., ECF No. 19. The Eastern District of Wisconsin transferred the case to this Court on May 27, 2016 [48].

Defendants filed a Motion to Compel Arbitration [58] on July 21, 2016, which the Court granted on September 16, 2016 [67]. The parties participated in an arbitration hearing in front of Robert C. O'Brien

---

[1] On November 16, 2015, Defendants filed a complaint in the Central District of California ("California Action") for specific performance of the arbitration agreement. See Painter et al. v. Daniels et al., 2:15-cv-08913-RSWL-E, ECF No. 1. Plaintiffs subsequently filed a Motion to Dismiss the Case [14] on December 15, 2015, which the Court granted on July 6, 2016 [35].

(the "Arbitrator") from November 13-17, 2017. Final Award 1:11-12. After hearing closing arguments on December 13, 2017, the Arbitrator issued his Final Award on March 19, 2018. Id. In the Final Award, the Arbitrator entered an award in favor of Plaintiffs and against Defendants in the amount of $2,607,287.40, which included past and future contract damages and prejudgment interest. Id. at 43:1-7. The Arbitrator also awarded Plaintiffs post-judgment interest at a rate of 10% per year. Id. at 44:23-24. The Arbitrator modified the Final Award on April 17, 2018 to add MagicSpace as a defendant jointly and severally liable for the Final Award. Andrews Decl., Ex. B.

Plaintiffs filed their instant Application [71] on May 1, 2018.[2] Defendants filed their Opposition [72] to Plaintiffs' Application on May 8, 2018. MagicSpace also filed an Opposition [73] to Plaintiffs' Application on May 8, 2018. Plaintiffs filed their Replies [74, 75] to Defendants' and MagicSpace's Oppositions on May 15, 2018.

MagicSpace and Defendants filed their Motions [76, 77] on May 22, 2018. Plaintiffs opposed [80, 81] on

---

[2] Defendants and MagicSpace argue that Plaintiffs failed to meet and confer prior to filing the Application in violation of Local Rule 7-3. However, a motion to confirm is a case-initiating document not subject to Local Rule 7-3. See Voltage Pictures, LLC v. Gulf Film, LLC, No. LACV1800696VAPSKX, 2018 WL 2110937, at *5 (C.D. Cal. Apr. 17, 2018). Further, even if such a filing was subject to Local Rule 7-3, Defendants and MagicSpace have not demonstrated any prejudice suffered because of Plaintiffs' failure to meet and confer.

May 29, 2018, and Defendants and MagicSpace replied [82, 83] on June 5, 2018.

## II. DISCUSSION

**A. Legal Standard**

Under 9 U.S.C. § 9, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008). "[C]onfirmation is required even in the face of 'erroneous findings of fact or misinterpretations of law.'" French v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 784 F.2d 902, 906 (9th Cir. 1986) (quotation omitted). "An arbitrator's decision must be upheld unless it is 'completely irrational,' or it constitutes a manifest disregard of the law.'" Id. (internal citations omitted). This standard provides "an extremely limited review authority." Kyocera Corp. v. Prudential-Bache T Servs., 341 F.3d 987, 998 (9th Cir. 2003). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." U.S. Life Ins. Co. v. Superior Nat'l Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010).

**B. Discussion**

In seeking to vacate the Final Award, Defendants and MagicSpace raise three separate issues where the Arbitrator allegedly manifestly disregarded the law. Each will be discussed in turn.

///

1. <u>Application of the Talent Agencies Act ("TAA")</u>

Defendants first argue that the Court should vacate the arbitration award because the Arbitrator disregarded the TAA, Cal. Lab. Code § 1700 et seq. More specifically, Defendants argue that the Creator Agreement was void from its inception because the TAA prohibits a person from acting as a talent agent without obtaining a license, and Daniels did not have a talent agent license at the time he entered into the Creator Agreement. This is the exact same argument Defendants made to the Arbitrator during the arbitration. In the Final Award, the Arbitrator discussed this defense at length and concluded that Daniels was not acting as a talent agent when he procured talent for The Show because he acted on behalf of The Show, not the artists. Final Award 28:6-9. According to the Arbitrator, "Daniels functioned in a role similar to a casting director for the Show, and, therefore, he did not need to be licensed under the TAA when recruiting and booking the Show's talent." <u>Id.</u> at 28:8-9.

Defendants fail to argue how the Arbitrator manifestly disregarded the TAA when he ruled in favor of Daniels. In reviewing an arbitration award for manifest disregard of the law, the court "may not reverse an arbitration award even in the face of an erroneous interpretation of the law." <u>Collins v. D.R. Horton, Inc.</u>, 505 F.3d 874, 879 (9th Cir. 2007).

"[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." Bosack v. Soward, 586 F.3d 1096, 1104 (9th Cir. 2009) (quotation omitted). Defendants have not provided any evidence that the Arbitrator intentionally disregarded the law. In fact, the Arbitrator discussed the TAA at length and, only after doing so, found that Daniels was not a talent agent as the TAA defines.[3] It is not the duty of this Court to reexamine the merits of Defendants' defense under the TAA. Because the Arbitrator specifically addressed the TAA and found it did not apply to Daniels, this Court cannot vacate the Final Award for "a mere error in the law or failure on the part of the arbitrators to understand and apply the law." Collins, 505 F.3d at 879 (citation omitted). The Court therefore **DENIES** Defendants' and MagicSpace's Motions based on their arguments under the TAA.

    2. <u>Holding Defendants and MagicSpace Liable for the Creator Agreement</u>

Defendants and MagicSpace next argue that the Arbitrator manifestly disregarded the law when he held Defendants and MagicSpace jointly and severally liable

---

[3] Defendants point to evidence showing Daniels worked on behalf of the talent, but the Arbitrator took this evidence into account along with other evidence showing Daniels worked on behalf of The Show to procure talent in determining the TAA did not apply to Daniels. This Court will not vacate the Final Award based on the Arbitrator's weighing of evidence.

9

for a contract to which not all parties were signatories. The Arbitrator specifically found Defendants and MagicSpace liable under the Creator Agreement. Final Award 16:15-22. With regard to MagicSpace, the Arbitrator found that MagicSpace, through an agreement with ALN, produces and presents The Show, which includes providing "'payroll, logistics, and tour management, marketing, advertisement, accounting, contracting and negotiation' services for the Show." Id. at 16 n.2. The Arbitrator noted that Defendants had previously argued that MagicSpace controlled "the finances and budgets from which the 10% fee to Daniels would be determined." Id. Finally, the Arbitrator concluded that "because MagicSpace did not appear at the Hearing to present a defense to Daniels' claims, the Arbitrator finds that [MagicSpace] cannot now argue that it is not bound by the Creator Agreement." Id.

The Creator Agreement was between Plaintiffs and Painter, ISA, and Lawson, but it also specifically stated that it was to apply to "any other entities [Painter, ISA, and Lawson] bring into, or work through, in presenting the theatrical product known as 'The Illusionists.'" Id. at 16:6-7. The Arbitrator held Defendants and MagicSpace jointly and severally liable for the Final Award because they all had a hand in presenting The Show and thus were subject to the Creator Agreement. See Vitarroz Corp. v. G. Willi Food

Int'l Ltd., 637 F. Supp. 2d 238, 246-47 (D.N.J. 2009) (finding arbitrator "did not manifestly disregard applicable law by finding that [the defendant] breached the Agreement despite the fact that the breaching conduct came from non-signatories to the Agreement"). This is specifically relevant to MagicSpace, which admittedly has been responsible for producing The Show since September 2013.

While Defendants and MagicSpace argue that Plaintiffs, through their arguments, aim to foreclose any review of arbitration awards, this is not the case. There may be instances where a court may vacate an arbitration award, but "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir. 1995). Defendants and MagicSpace continue to argue the merits of the issues the Arbitrator specifically addressed, but it is not the Court's duty to review these arguments. If such review was not limited, an arbitration would merely be "the prelude to a more cumbersome and time-consuming judicial review process." Hall, 552 U.S. at 588 (quotation omitted).

Defendants and MagicSpace fail to provide evidence that the Arbitrator was aware of the applicable law and purposely ignored it. While Defendants rely on Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277, 1287 (9th Cir. 2009), that case dealt with the

arbitrator issuing an injunction, the power of which is contained in Federal Rule of Civil Procedure 65. Here, the Arbitrator did not issue any injunction. Further, the arbitrator in Comedy Club issued an injunction that affected people such as "cousins of former spouses" of the plaintiff, who had no connection whatsoever to the litigation. Id. Here, the Final Award is not so broad as the injunction in Comedy Club. All parties that the Arbitrator ruled were liable to Daniels were in some form related to the production of The Show and therefore benefitted from the services Daniels provided to The Show. See id. (finding the inclusion of relatives as parties to the injunction in the arbitrator's award went "well beyond binding [the plaintiff's] agents, employees, or people in active concert or participation with it"). Because Defendants and MagicSpace have not provided evidence that clearly shows the Arbitrator knew of and specifically disregarded controlling law, Defendants and MagicSpace have failed to prove a manifest disregard of the law worthy of vacating the Final Award. See Collins v. D.R. Horton, Inc., 361 F. Supp. 2d 1085, 1100 (D. Ariz. 2005), aff'd, 505 F.3d 874 (9th Cir. 2007) ("Absent evidence . . . reliably demonstrating that the arbitrator actually misapplied the relevant law and did so with knowledge of the error of that action and/or the intention to nullify the law or an awareness that he was doing so, vacatur is not appropriate."

(quotation omitted)). The Court therefore **DENIES** Defendants' and MagicSpace's Motions with regard to holding non-signatories of the Creator Agreement liable for the Final Award.

   3. Failure to Reduce Future Damages Award to Present Value

Finally, Defendants argue that the Arbitrator "manifestly disregarded California law, which requires future damages to be reduced to present cash value." Defs.' Mot. to Vacate Award 2:20-21, ECF No. 77. In the Final Award, the Arbitrator awarded Daniels $1,580,453.40 in future damages for the period of April 2018 through the end of 2023. Final Award 42:20-21. The Arbitrator calculated this number by reviewing the total 2017 act fee budget, extending that budget for the next six years, and then taking ten percent of that figure. Id. at 42:7-13.

Defendants argue that it was error for the Arbitrator to not discount this award to present value. Defendants do not offer argument to show that they presented evidence to the Arbitrator regarding discounting the award of future damages to present value. As a preliminary matter, a calculation of future lost profits is, by its nature, a "rough approximation." Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 546 (1983), overruled on other grounds by 33 U.S.C. § 905(b). Further, the Ninth Circuit has specifically held that the burden is on the

defendant to put forth evidence regarding the proper discount rate. Alma v. Mfs. Hanover Tr. Co., 684 F.2d 622, 626 (9th Cir. 1982). There is no evidence that Defendants met this burden, and therefore, the Arbitrator was not required to discount the future damages award to present value. See Patel v. Verde Valley Med. Ctr., No. CV-05-1129-PHX-MHM, 2009 U.S. Dist. LEXIS 125463, at *10 (D. Ariz. Mar. 31, 2009) (finding "failure to apply a discount rate to [a] damages estimate is irrelevant because the burden of producing evidence of an appropriate discount rate rests with the defendant" (citation omitted)); see also Budget Blinds Inc. v. LeClair, No. SACV 12-1101 DOC (MLGx), 2013 U.S. Dist. LEXIS 7463, at *21 (C.D. Cal. Jan. 16, 2013) (refusing to overturn arbitrator's award of future damages because "it is not apparent on the face of the award that the damages amount was blatant, willful error"). Consequently, the Court **DENIES** Defendants' and MagicSpace's Motions regarding the Arbitrator's award of future damages.

Because Defendants and MagicSpace have not provided any meritorious ground for vacating the Final Award, the Court **GRANTS** Plaintiffs' Application **in part** and confirms the Final Award.

4. Plaintiffs' Request for Attorneys' Fees

Plaintiffs argue that they are entitled to attorneys' fees because Defendants "have unjustifiably refused to comply with the Final Award." Pls.' Opp'n

to Defs.' Mot. to Vacate Award 11:7-8, ECF No. 80. While parties typically bear their own attorneys' fees absent a contract or statute authorizing otherwise, "a court may assess attorneys' fees 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc., 707 F.2d 425, 428 (9th Cir. 1983) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)).

In Screen Actors Guild, Inc. v. Farm Fed Productions, LLC, No. CV 09-6027-GW(VBKX), 2009 WL 10674391, at *3 (C.D. Cal. Nov. 5, 2009), a case on which Plaintiffs rely, the court noted cases that have distinguished International Union. These cases denied attorneys' fees requests because the non-prevailing party at arbitration was involved "in the litigation at the district court level." Id. The court in Screen Actors Guild ultimately awarded attorneys' fees because the defendant failed to provide any legal arguments for failing to comply with the arbitration award and in fact, failed to even oppose the plaintiff's motion to confirm the arbitration award. Id.

Here, while Defendants have failed to pay the arbitration award, they have been involved in the district court litigation, including opposing Plaintiffs' Application and filing their own Motion to Vacate. Defendants arguments may not lead the Court to vacate the Final Award, but their actions do not

demonstrate bad faith. The Court therefore **DENIES** Plaintiffs' request for attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' and MagicSpace's Motions and **GRANTS** Plaintiff's Application, confirming the Final Award in full, but **DENIES** Plaintiff's request for attorneys' fees.

**IT IS SO ORDERED.**

DATED: July 16, 2018        s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge